# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE:<br><br>W. RAFER LEACH, M.D.<br><br>Debtor. | Case No. 17-18112 TBM<br><br>Chapter 11 |

## FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION
## DATED ~~APRIL 17~~JUNE 12, 2019

W. RAFER LEACH, M.D., as Debtor-in-Possession within the above-captioned bankruptcy case in accordance with 11 U.S.C. §§ 1107 and 1108, and Plan Proponent[1] herein, hereby respectfully submits this First Amended Plan of Reorganization Dated ~~April 17~~June 11, 2019 under Chapter 11 of Title 11 of the United States Code to the United States Bankruptcy Court for the District of Colorado, his creditors and all other interested parties, pursuant to 11 U.S.C. § 1121(a), and in support thereof, proposes as follows:

## TABLE OF CONTENTS

ARTICLE I:      Summary ........................................................................................... 2

ARTICLE II:     Defined Terms, Rules of Interpretation and Other References........................ 2

ARTICLE III:    Treatment of Administrative Expenses and Priority Claims .......................... 11

ARTICLE IV:     Treatment of Claims and Interests ................................................. 14

ARTICLE V:      Allowance and Disallowance of Claims ........................................... 17

ARTICLE VI:     Treatment of Executory Contracts and Unexpired Leases ............................ 18

ARTICLE VII:    Means of Implementation and Distribution of Plan Payments ...................... 20

ARTICLE VIII:   Effect of Plan Confirmation.......................................................... 23

ARTICLE IX:     Plan Modification, Revocation or Withdrawal ............................................ 26

ARTICLE X:      Miscellaneous Provisions................................................................. 27

---

[1]   Capitalized terms used within the introductory paragraph of this Plan are hereinafter defined in Article II.A.

# ARTICLE I
## SUMMARY

The Plan Proponent[2] proposes to pay Holders of Secured Claims by surrendering Assets of the Bankruptcy Estate for which such Claimants hold a security interest against and the value of the Bankruptcy Estate's interest in such Assets is equal to or greater than the amount of the Allowed Claims. In addition, the Plan Proponent proposes to pay Holders of Allowed Unsecured Claims from Monthly Disposable Income deposited into the DIP Account within a sixty (60) month period, commencing on the Effective Date.

This Plan provides for two (2) Classes of Secured Claims, one (1) Class of Priority Unsecured Claims, one (1) class of Allowed Unsecured Claims and for the payment of Administrative Expense and Priority Tax Claims otherwise not classified within any Class. The Holders of Allowed Unsecured Claims shall receive distributions that the Plan Proponent values – when including Claims Disputed but not Disallowed – in the approximate amount of twenty-one cents ($0.21) on the dollar (i.e. 21.8%). Administrative Expense and Priority Tax Claims shall receive payments either: (a) in full on the Effective Date, (b) pursuant to a written agreement between the Debtor and the Administrative Expense Claimant, or (c) by an Order of the Bankruptcy Court.

All creditors should refer to Article(s) III through VI of this Plan for information regarding the precise treatment of their claims. The Plan Proponent circulates the *Disclosure Statement in Support of Plan of Reorganization Dated ~~April 17~~June 12, 2019* contemporaneously herewith, which provides further information regarding this Plan, and the rights of creditors hereunder.

**YOUR RIGHTS MAY BE AFFECTED. You should read these papers carefully and discuss them with your attorney, if you have one. If you otherwise do not have an attorney, you may wish to consult one.**

# ARTICLE II
## DEFINED TERMS, RULES OF INTERPRETATION AND OTHER REFERENCES

**II.A.** **Defined Terms and Rules of Construction.** Unless context requires otherwise, or a term is defined elsewhere in this Plan or the Disclosure Statement, the definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan or the Disclosure Statement as supplemented by certain and specific terms when used in capitalized form, as follows:

**II.A.1.** Administrative Expense means, when referring to a Claim, any cost or expense incurred during the administration of the above-captioned Chapter 11 Bankruptcy Case, as Allowed under 11 U.S.C. § 503(b) and referred to within 11 U.S.C. § 507(a)(2) including, but not limited to, (a) Claim(s) under 11 U.S.C. § 503(b)(9), (b) any actual and necessary costs and expenses of preserving the Bankruptcy Estate, (c) any actual, necessary and ordinary costs and expenses of the Debtor after the Petition Date, (d) all Professional Fees Claims, (e) any fees or charges assessed against the Bankruptcy Estate under 28 U.S.C. § 1930, (f) any and all post-petition taxes assessed against the Debtor, and (g) any and all other Claim(s) entitled to

---

[2]   Capitalized terms used within Article I of this Plan are hereinafter defined in Article II.A.

Administrative Expense Claim status pursuant to a Final Order of the Bankruptcy Court including, but not limited to, any Claims under 11 U.S.C. § 507(b) incurred from the Petition Date up to and through the Effective Date.

**II.A.2.**   Allowed means any Claim, or applicable portion thereof, that: (a) has been allowed by a Final Order of the Bankruptcy Court; (b) has been Scheduled, other than a claim that has been Scheduled as disputed, contingent or unliquidated, and which Scheduled claim has not been superseded by a proof of claim; (c) is the subject of a timely filed proof of claim without any objection thereto, or motion to subordinate, disallow or otherwise limit recovery, has been made prior to the Claim Objection Deadline; or (d) has been specifically "Allowed" pursuant to the Plan.

**II.A.3.**   Assets means all tangible and intangible property, rights and interests of every kind and nature owned, controlled, maintained and/or operated by the Debtor and/or the Bankruptcy Estate as provided under 11 U.S.C. §§ 541 and 1115 including, but not limited to, all Causes of Action and all proceeds thereof, existing as of the Effective Date, except those released under this Plan or a Final Order.

**II.A.4.**   Available Cash means the cash on hand in the DIP Account, as defined in Article II.1.25 *infra*, at any given time after payment in full of all Allowed Administrative Expense Claim including, but not limited to, any further, future and/or ongoing administration expenses incurred by the Plan Proponent after the Effective Date, Allowed Priority Tax Claims, and reserves reasonably necessary for payment of U.S. Trustee Fees and expenses incurred to Professionals employed to administer the Bankruptcy Estate, distribute Plan Payments hereunder and assist the Plan Proponent comply with this Plan.

**II.A.5.**   Avoidance Action(s) means civil actions commenced by the Plan Proponent for the avoidance and recovery of pre and/or post-petition transfers under 11 U.S.C. §§ 544, 545, 547, 548, 549, 550 and/or 553(b); and claims for turnover of property to the Bankruptcy Estate under 11 U.S.C. § 542.

**II.A.6.**   Ballot(s) means the form for accepting or rejecting this Plan, distributed to Holders of Allowed and Impaired Claims and are entitled to vote to accept or reject the Plan. A Ballot identical to the Ballot the Plan Proponent shall present with the Plan ("***Proposed Ballot***") is attached to the Disclosure Statement as **EXHIBIT 3** and incorporated by reference therein. Upon approval by the Bankruptcy Court, each Holder of an Allowed and Impaired Claim shall use for voting purposes the Ballot attached hereto as **ADDENDUM A** and incorporated by reference herein.

**II.A.7.**   Bankruptcy Case means the title and case number identified in the caption of this Plan; styled as, *In re Leach, M.D.*, Case No. 17- 18112 TBM.

**II.A.8.**   Bankruptcy Code means the Bankruptcy Reform Act of 1978, as codified under Title 11 of the United States Code, 11 U.S.C. § 1010, *et seq*., and any amendments thereof, as effective on the Petition Date and applicable to this Bankruptcy Case.

**II.A.9.**   Bankruptcy Court means the United States Bankruptcy Court for the District of Colorado, which is the venue that the above-captioned Chapter 11 bankruptcy case is currently pending.

**II.A.10.** Bankruptcy Estate means the estate created on the Petition Date and administered by the Debtor at all dates and times during the Bankruptcy Case, pursuant to 11 U.S.C. §§ 301, 541, 1107 and 1108; comprised of any and all equitable or legal ownership interest in Assets and legal claims, among other property as defined under 11 U.S.C. §§ 541 and 1115, the Debtor owned as of the Petition Date or acquired thereafter up to and through the Effective Date.

**II.A.11.** Bankruptcy Rules means (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under 28 U.S.C. § 2075, and hereinafter cited to as Fed.R.Bankr.P.; (b) the Federal Rule of Civil Procedure, as made applicable under and incorporated by the Federal Rules of Bankruptcy Procedure, and hereinafter cited to as Fed.R.Civ.P.; (c) the applicable Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Colorado, effective December 1, 2017, as hereinafter cited to as L.B.R.; (d) any general or specific chamber rules or procedures, or standing orders governing practice and procedure issued by the Bankruptcy Court; (e) and all amendments and modifications thereto; which are effective as of the Petition Date and applicable to this Bankruptcy Case.

**II.A.12.** Business Day means a day other than a Saturday, Sunday or legal holiday as defined in Fed.R.Bankr.P. 9006(a), or other day that the Bankruptcy Court is authorized or required by law to close.

**II.A.13.** Business Entities means certain entities existing within and under the laws of Colorado that the Debtor held a one hundred percent (100%) ownership or membership interest as of the Petition Date, as follows: (a) W. Rafer Leach, M.D., P.C., incorporated on April 21, 2003 pursuant to Document No. 20031127854 ("***WRL PC***"); (b) MSK Medical, LLC, organized on April 28, 2014 pursuant to Document No. 20141273158, and the subsidiaries thereof organized on May 21, 2014, as follows: MSK Medical – Aurora, LLC, MSK Medical – Lakewood, LLC, MSK Medical – Westminster, LLC and MSK Medical – Denver, LLC (hereinafter, collectively "***MSK Medical***"); and (c) Image MD, LLC, organized on April 20, 2015 pursuant to Document No. 20151262527 ("***Image MD***").

**II.A.14.** Cash means the legal tender of the United States of America, or the equivalent thereof, including, but not limited to, bank deposits and checks.

**II.A.15.** Cause(s) of Action means any and all claims, actions, suits, appeals, debts, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims of the Debtor and his Bankruptcy Estate, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured,

disputed or undisputed, against any entity or person, based in law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise, and whether asserted or unasserted as of the entry of the Confirmation Order, unless otherwise waived or released by the Debtor during the Bankruptcy Case, under this Plan, the Confirmation Order or any other Final Order.

**II.A.16.** <u>Claimant</u> means the Holder of an Allowed Claim as such term is defined within 11 U.S.C. § 101(5) and Section II.1.2 *supra*.

**II.A.17.** <u>Claims Analysis</u> means the table of information attached to the Disclosure Statement as **EXHIBIT 5** and incorporated by reference therein, which identifies, *inter alia*, the Classes of Claims and the amount the Plan Proponent proposes to pay each Holder of an Allowed Claim under the Plan.

**II.A.18.** <u>Claims Bar Date</u> means the applicable date and time designated by the Bankruptcy Court as the deadline for filing Proofs of Claim in this Bankruptcy Case, set forth in the *Order Granting Debtor's Application to Set Bar Date* as November 9, 2017 at 5:00 p.m. prevailing Mountain Standard Time.

**II.A.19.** <u>Claim Objection Deadline</u> means the later date and time for objecting to claims as filed and served upon the Holder of each claim to which objections are made in accordance with the Bankruptcy Code, the Bankruptcy Rules and/or any applicable non-bankruptcy law, as follows: (a) one hundred eighty (180)-days after the Effective Date, as such term is defined in Article II.1.18 *infra*, and (b) such other date as may be fixed and/or extended by the Bankruptcy Court, after notice and a hearing, after the Plan Proponent has filed a motion prior to the expiration of the deadline to object to Claims.

**II.A.20.** <u>Class(es)</u> means a category of Holders of Claims as set forth in Article III and in accordance with 11 U.S.C. § 1122(a).

**II.A.21.** <u>Confirmation Date</u> means the date the Bankruptcy Court enters the Confirmation Order on the docket of this Bankruptcy Case, pursuant to Fed.R.Bankr.P. 5003 and 9021.

**II.A.22.** <u>Confirmation Order</u> means the Final Order of the Bankruptcy Court confirming the Plan, pursuant to 11 U.S.C. § 1129 together with any other applicable provisions of Chapters 3, 5 and 11 of the Bankruptcy Code.

**II.A.23.** <u>Consummation</u> means the occurrence of the Effective Date.

**II.A.24.** <u>Consensual Plan</u> means Confirmation of the Plan with acceptance of ALL Classes of Claims required to vote on the Plan, considering ALL Classes are deemed to accept the Plan provided that two-thirds majority in the dollar amount of Claims voting and a majority in number of Claims voting timely and properly return Ballots identifying a vote to accept the Plan.

**II.A.25.** <u>Debtor</u> means Dr. W. Rafer Leach, M.D. at any and all times and dates prior to the date of this Plan including, but not limited to, prior to the Petition Date and

acting in his capacity as debtor-in-possession in accordance with 11 U.S.C. §§ 1107 and 1108 over the course of this Bankruptcy Case.

**II.A.26.** <u>DIP Account</u> means depository Account No. xxxxxx2298 the Debtor has maintained with Wells Fargo Bank, N.A. from September 26, 2017 up to and through the date of this Plan, which shall remain open and maintained by the Plan Proponent until the Bankruptcy Case is closed upon completion of all Plan Payments, dismissed, or converted to another chapter of the Bankruptcy Code.

**II.A.27.** <u>Disallowed</u> means any and all Claim(s), or the applicable portion thereof, that the Bankruptcy Court has disallowed by a Final Order including, for the avoidance of doubt, the Confirmation Order.

**II.A.28.** <u>Disclosure Statement</u> means the *First Amended Disclosure Statement in Support of Plan of Reorganization Dated ~~April 17~~June 12, 2019*, including all exhibits and schedules attached thereto and incorporated by reference therein; which is attached hereto and incorporated by reference herein as **ADDENDUM B.**

**II.A.29.** <u>Disclosure Statement Order</u> means the order approving the Disclosure Statement, certain procedures for solicitation of votes on the Plan and granting related relief.

**II.A.30.** <u>Disputed Claim</u> means a Claim, or any applicable portion thereof that is: (a) not Allowed and (b) not Disallowed under the Plan, the Bankruptcy Code or a Final Order.

**II.A.31.** <u>Effective Date</u> means the first day of the first month following fifteen (15) business after the Bankruptcy Court enters the Confirmation Order or, if a stay of the Confirmation Order is in effect on that date, the first business day after that date on which no stay of the Confirmation Order is in effect provided that the Confirmation Order has not been vacated.

**II.A.32.** <u>Estimated</u> means, when referring to a Disputed Claim, means any Claim requested by the Debtor prior to the Effective Date or the Plan Proponent after the Effective Date that the bankruptcy Court estimate pursuant to applicable law including, but not limited to 11 U.S.C. § 502(c), regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. In the event the Bankruptcy Court estimates any Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, and the Debtor or Plan Proponent, as applicable, may elect to pursue additional objections to the ultimate distribution on such Claim; or, if the estimated amount constitutes a maximum limitation on such Claim, the Debtor or Plan Proponent, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim. Notwithstanding 11 U.S.C. § 502(j), in no event shall any Holder of a Claim that has been estimated pursuant to section 11 U.S.C. § 502(c) or otherwise be entitled to seek reconsideration of such estimation unless such Holder moves for reconsideration on or before seven (7) days after the date on which such Claim is estimated.

**II.A.33.** <u>Executory Contract(s)</u> means a contract to which the Debtor is a party that is subject to assumption or rejection under 11 U.S.C. §§ 365 or 1123, and "the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other." *In re Baird*, 567 F.3d 1207, 1210 (10th Cir.2009)(quoting Vern Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn. L.Rev. 439, 460 (1973)).

**II.A.34.** <u>Family Expense Account</u> means a bank account the Plan Proponent shall open with a financial institution the U.S. Trustee identifies as an authorized depository on or before the Confirmation Date and no later than the Effective Date, where the Plan Proponent shall deposit all wages earned not otherwise Monthly Disposable Income for paying ordinary and necessary expenses incurred up to and through the closure of this Bankruptcy Case.

**II.A.35.** <u>Final Order</u> means an order or judgment of the Bankruptcy Court, as entered on the docket in the Bankruptcy Case, the docket of any applicable ancillary adversary proceedings and bankruptcy cases before the Bankruptcy Court, or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, reconsideration, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, or motion for reargument, reconsideration, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

**II.A.36.** <u>Holder(s)</u> means any person or entity, as such terms are defined under 11 U.S.C. §§ 101(15) and (41), holding a Claim against the Bankruptcy Estate.

**II.A.37.** <u>Impaired</u> means a Class of Claims that is not Unimpaired, as such term is defined under 11 U.S.C. § 1124.

**II.A.38.** <u>Liquidation Analysis</u> means the table of information attached to the Disclosure Statement as **EXHIBIT 7** and incorporated by reference therein, which identifies the Assets of the Bankruptcy Estate from the Petition Date through the Effective Date, the values of such Assets and the amount of Cash available for distribution to Holders of Allowed Unsecured Claims if such Assets were subject to a sale and liquidation by a duly-appointed Chapter 7 Trustee in accordance with Chapter 7 of the Bankruptcy Code.

**II.A.39.** <u>Monthly Disposable Income</u> means "disposable income" as such term is defined under 11 U.S.C. §§ 1325(b)(2) and 1129(a)(15), as calculated within the *Chapter 11 Calculation of Monthly Disposable Income* attached to the Disclosure Statement as **EXHIBIT 46** and incorporated by reference therein, which provides

for the greatest sum of funds distributed to Holders of Allowed Unsecured Claims; and in lieu of filing an amended Chapter 11 Current Monthly Income, the Plan Proponent discloses the average sum of income reported in the Monthly Operating Report(s) for the periods of September 1, 2018 through February 28, 2018. *Cf. In re Roedemeier*, 374 B.R. 264, 273-74 (Bankr.D.Kan.2007).

**II.A.40.** <u>Monthly Operating Report(s)</u> means the Chapter 11 Monthly Report of Operations, together with the financial statements attached thereto, prepared by the Debtor or Professionals authorized to render services on his behalf each and every month from the Petition Date through the Confirmation Date and filed with the Bankruptcy Court on or about the twenty-first day of each month after the applicable month reported and found on the docket within the Bankruptcy Case as a Monthly Report of Operations, which consists of financial information for a period commencing on the first day of each month and concluding on the final day of the same. The *Chapter 11 Monthly Operating Report for Period Ending Date ~~February 28~~April 30, 2019* is attached to the Disclosure Statement as **EXHIBIT 4** and incorporated by reference therein.

**II.A.41.** <u>Petition Date</u> means August 30, 2017, which is the date that the Debtor commenced the Bankruptcy Case by filing Official Form 101: *Voluntary Petition for Individuals Filing for Bankruptcy*.

**II.A.42.** <u>Plan</u> means this *First Amended Chapter 11 Plan of Reorganization Dated ~~April 17~~June 12, 2019* and any such amendments hereto, if any, as the Plan Proponent may propose hereafter.

**II.A.43.** <u>Plan Payment(s)</u> means Cash the Plan Proponent shall distribute to Holders of Allowed Unsecured Claims on a quarterly basis from Monthly Disposable Income deposited into the DIP Account or other forms of Available Cash, as more-fully set forth in Article(s) VI.6 and VII *infra*.

**II.A.44.** <u>Plan Proponent</u> means, prior to the Effective Date, the Debtor in his capacity as the person proposing this Plan; and on and after the Effective Date, the Debtor as reorganized hereunder and selected to facilitate distribution of Plan Payments that are to be made on or after the Effective Date pursuant to this Plan.

**II.A.45.** <u>Post-Petition Income</u> means wages and earnings the Debtor generated and received on and after the Petition Date, which is an Asset of the Bankruptcy Court under 11 U.S.C. § 1115.

**II.A.46.** <u>Priority</u> means, when referring to a Claim, any person or entity accorded priority in right of payment under 11 U.S.C. § 507(a), other than a Priority Tax Claim or Administrative Expense Claim.

**II.A.47.** <u>Priority Tax Claim</u> means any Claim of a governmental unit, as defined under 11 U.S.C. § 101(27), of the kind specified in 11 U.S.C. § 507(a)(8).

**II.A.48.** <u>Professional Fee</u> means, when referring to a Claim, an Administrative Expense Claim incurred to Professionals employed by the Bankruptcy Estate as reasonable compensation of fees and expenses for services rendered and now owing.

**II.A.49.** <u>Professional(s)</u> means any person or entity: (a) retained in the Bankruptcy Case pursuant to a Final Order in accordance with 11 U.S.C. §§ 327, 328, 363 and/or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred before or on the Confirmation Date, pursuant to 11 U.S.C. §§ 327, 328, 329, 330, 363 and/or 331; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to 11 U.S.C. § 503(b)(4).

**II.A.50.** <u>Proof(s) of Claim</u> means a proof of Claim filed against the Debtor in the Bankruptcy Case prior to the Claims Bar Date, in substantial conformity with Official Form 410 and in accordance with Fed.R.Bankr.P. 3001 and 3002.

**II.A.51.** <u>Pro-Rata Share</u> means a Claimant's proportionate share of any distribution as determined by dividing the amount of its Allowed Claim by the total of all Allowed and Disputed and estimated Claims in such class.

**II.A.52.** <u>Scheduled</u> means information the Debtor disclosed within the Schedules filed with the Bankruptcy Court under Bankruptcy Rule 1007, as amended or supplemented.

**II.A.53.** <u>Schedules</u> means collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs the Debtor filed with the Bankruptcy Court on October 3, 2017, pursuant to 11 U.S.C. § 521 and in substantial accordance with the official bankruptcy forms; wherein the Debtor identifies his Assets and liabilities as of the Petition Date.

**II.A.54.** <u>Secured</u> means, when referring to a Claim secured by a valid, perfected and enforceable lien – pursuant to applicable law, an order of Bankruptcy Court or the Plan – on property in which the Bankruptcy Estate has an interest, or that is subject to setoff pursuant to 11 U.S.C. § 553, to the extent of the value of the creditor's interest in the Bankruptcy Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, determined pursuant to 11 U.S.C. § 506(a).

**II.A.55.** <u>Unexpired Lease(s)</u> means a lease to which the Debtor is a party that is subject to assumption or rejection under 11 U.S.C. §§ 365 or 1123.

**II.A.56.** <u>Unimpaired</u> means, with respect to a Class of Claims, a Claim that is unimpaired within the meaning of 11 U.S.C. § 1124.

**II.A.57.** <u>U.S. Trustee</u> means the Office of the United States Trustee for the District of Colorado.

**II.A.58.** <u>U.S. Trustee Fees</u> means the fees that shall accrue and become payable under 28 U.S.C. § 1930(a)(6), as applicable, for each quarter until this Bankruptcy Case is closed, dismissed, or converted to another chapter of the Bankruptcy Code.

**II.A.59.** <u>Unsecured</u> means, when referring to a Claim, any Claim against the Debtor that is Allowed and not otherwise either paid in full during the Bankruptcy Case pursuant to an order of the Bankruptcy Court, an Administrative Expense Claim, Priority Claim or Priority Tax Claim; and shall include any deficiency amount of a Claim arising to the Holder of an Allowed Secured Claim under 11 U.S.C. §506, after notice and a hearing pursuant to FED.R.BANKR.P. 3012 or resulting from any agreement reached between the Claimant and the Debtor in which it is determined that the value of the collateral securing the claim is less than the Allowed Claim.

**II.B.** **Rules of Interpretation.** For purposes of this Plan, certain and specific rules of interpretation shall apply, as follows: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections herein or hereto; (e) the words "herein" and "hereto" refer to this Plan in its entirety rather than to any particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of, or to affect, the interpretation herein; (g) unless otherwise specified herein, the rules of construction set forth in 11 U.S.C. § 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (i) unless stated otherwise hereinafter, "Dkt. No. __" shall refer to the docket number of, *inter alia*, the pleading, document, notice or order entered on the docket of the Bankruptcy Case as maintained by the Bankruptcy Court on the Case Management/Electronic Case Filing system; AND (j) any immaterial effectuating provisions may be interpreted in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other person or entity.

**II.C.** **Governing Law.** Except to the extent the Bankruptcy Code or the Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Colorado, without giving effect to conflict-of-laws principles; provided that the corporate, limited or general partnership, or limited liability company governance matters shall be governed by the laws of the state of incorporation or formation of the applicable Entity.

**II.D.** **Computation of Time.** FED.R.BANKR.P. 9006(a) applies in computing any time period prescribed or allowed herein. If the date on which a transaction is required, or otherwise

may occur, shall arise not on a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

**II.E.** **Reference to Monetary Figures**. For the purposes of this Plan, monetary figures refer to currency of the United States of America as expressed in dollar amounts, unless otherwise expressly provided.

**II.F.** **Reference to Debtor or Plan Proponent.** Except as otherwise specifically provided in this Plan to the contrary, and to the extent context requires, references to the Plan Proponent means the Debtor in his capacity as the party proposing this Plan and holding all rights and responsibilities to arise hereunder after the Effective Date as the reorganized entity.

**II.G.** **Controlling Document.** Except as set forth in the Plan, to the extent that (a) any provision of the Disclosure Statement; (b) any other pleading, document or order referenced in the Plan; or (c) any exhibits, schedules, supplements, or amendments to any of the foregoing conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; provided, however, with respect to any conflict or inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS

**III.A.** **Unclassified Claims.** Pursuant to 11 U.S.C. § 1123(a)(1), Administrative Expense Claims – including claims incurred for fees and expenses due and owing to Professionals employed in accordance with the Bankruptcy Code – and Priority Tax Claims are excluded from the Classes of Claims set forth in Article V of this Plan.

**III.B.** **Administrative Expense Claims.** As consideration for full and final satisfaction, settlement, release, and discharge of, and in exchange for, any Administrative Expense Claim, each Holder of an Administrative Expense Claim, as allowed under 11 U.S.C. § 503, shall receive, as follows: (i) Cash in an amount equal to the amount of such Allowed Administrative Expense Claim as soon as reasonably practicable after either (a) the Effective Date, if such Administrative Expense Claim is Allowed as of the Effective Date, (b) thirty (30) days after the date such Administrative Expense Claim becomes Allowed, if such Claim is Disputed as of, or following, the Effective Date, or (c) the date such Allowed Administrative Expense Claim becomes due and payable in the ordinary course of business in accordance with the terms, and subject to the conditions, of any agreements governing, instruments evidencing, or other documents relating to, the applicable transaction giving rise to an Allowed Administrative Expense Claim, if such Allowed Claim is based on liabilities incurred by the Debtor in the ordinary course of his financial affairs; (ii) such other treatment as the Debtor and such Holder shall have agreed in writing on or before the Effective Date, (iii) other terms the Plan Proponent and the Holder mutually agrees upon after the Effective Date; or (iii) according to a Final Order of the Bankruptcy Court.

**III.B.1.** Excepted Parties. Certain and specific Administrative Expense Claims are excepted from the requirement to file a Proof of Claim as described below, as follows: (i) a Professional Fee Claim; (ii) any Claim for fees payable to the clerk

of the Court; (iii) any U. S. Trustee Fees payable under 28 U.S.C. § 1930(a)(6) or accrued interest thereon arising under 31 U.S.C. § 3717; (iv) an Administrative Expense Claim that has been Allowed on or before the Effective Date; (v) an Administrative Expense Claim of a governmental unit – as defined under 11 U.S.C. § 101(27) – not required to be filed pursuant to 11 U.S.C. § 503(b)(1)(D); (vi) an Administrative Expense Claim on account of fees and expenses incurred by Professionals the Debtor retained on or after the Petition Date for services rendered in the ordinary course, pursuant to a Final Order of the Bankruptcy Court; (vii) an Administrative Expense Claim arising, in the ordinary course of the Debtor's financial affairs, out of the employment of an individual on or after the Petition Date, but only to the extent that such Claim arises from outstanding wages, commissions, or reimbursement of business expenses; (viii) an Administrative Expense Claim that (1) the Debtor previously paid in the ordinary course, or (2) has otherwise been satisfied; or (ix) an Administrative Expense Claim previously filed with the Court.

**III.B.2.** <u>Procedure</u>. Each Holder of an Administrative Expense Claim must file with the Court and serve on the Plan Proponent, and the United States Trustee –other than a Claim excepted from filing a Proof of Claim under the nine (9) exemptions more fully described *supra* – proof of such Administrative Expense Claim. FAILURE TO TIMELY FILE AND SERVE SUCH APPLICATION SHALL RESULT IN THE ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED AND DISCHARGED WITHOUT THE NEED FOR FURTHER ACTION, ORDER OR APPROVAL OF, OR NOTICE TO, THE COURT.

**III.B.3.** <u>Burden of Proof</u>. Any person and/or entity seeking to hold an Allowed Administrative Expense Claim shall prepare an application for all fees and expenses incurred through the Effective Date. Proof of an Administrative Expense Claim must include, at a minimum, as follows: (i) the name of the Debtor, or other party-in-interest that is purportedly liable for the Administrative Expense Claim; (ii) the name of the Holder of the Administrative Expense Claim; (iii) the amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Claim including, but not limited, invoices and/or records demonstrating cost per billable hour, description of services rendered and amount of time required to perform such services.

**III.C.** **Professional Fee Claims.** The Bankruptcy Court shall determine the Allowed amounts of Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code. The Plan Proponent shall pay Professional Claims in Cash the amount Allowed by the Bankruptcy Court. Holders of Professional Fee Claims shall file and serve on the Plan Proponent any request for allowance and payment of such Professional Fee Claims no later than forty-five (45) days after the Effective Date, unless otherwise agreed by the Plan Proponent, or otherwise be forever barred, estopped, and enjoined from asserting such Claims against the Debtor or the Plan Proponent (as applicable), their respective Estates and property, or otherwise, and such Professional Fee Claims shall be deemed discharged as of the Effective Date.

**III.C.1.** <u>Procedure for Resolving Objections</u>. Objections to any Professional Fee Claims must be filed and served on the Plan Proponent, counsel for the Plan Proponent, and the requesting party no later than thirty (30) days after the filing of the final applications for compensation or reimbursement, unless otherwise agreed by the party requesting compensation of a Professional Fee Claim. If no objections are timely filed and properly served as to a given request, or all timely objections are subsequently resolved, such Professionals shall submit to the Bankruptcy Court for consideration a proposed Order approving the Professional Fee Claim as an Allowed Administrative Expense Claim in the amount requested, or otherwise agreed, and the Bankruptcy Court may enter a Final Order without a hearing or further notice to any party. The Allowed amounts of any Professional Fee Claims subject to unresolved timely objections shall be determined by the Bankruptcy Court at a hearing to be held no later than thirty (30) days after the objection deadline. The Plan Proponent shall tender payment to a Holder of an Allowed Professional Fee Claim as soon as reasonably practicable after such Professional Fee Claim(s) become Allowed, or in accordance with any other Order.

**III.C.2.** <u>Post-Effective Date Professional Fees</u>. From and after the Effective Date, the Plan Proponent shall pay in Cash the legal fees and expenses related to services rendered by professionals employed by the Plan Proponent and incurred in the ordinary course of business without any further notice to or action, Order or approval of the Court. For the avoidance of doubt, following the Effective Date, any requirement that a professional comply with 11 U.S.C. §§ 327 through 331, in seeking compensation for services rendered after such date, shall terminate.

**III.D.** **<u>U.S. Trustee Fees.</u>** The Plan Proponent shall timely tender all fees accrued and payable under 28 U.S.C. § 1930(a)(6), as applicable, for each quarter until this Bankruptcy Case becomes subject to the earlier of such possible events, as follows: closed, dismissed, converted to another chapter under the Bankruptcy Code or the Court issues a Final Decree. The Plan Proponent shall pay in Cash, on or as soon as practicable after the Effective Date, any U.S. Trustee Fees due and owing on or before the Effective Date; and shall be responsible for paying all U.S. Trustee Fees arising thereafter based on disbursements under Article VII of this Plan and submission to the Office for the United States Trustee of post-confirmation quarterly reports regarding the activity of the Plan Proponent until the Bankruptcy Case is closed.

**III.E.** **<u>Priority Tax Claims.</u>** Each Holder of a Priority Tax Claim – including the Secured portion of any Claim entitled to Priority – as Allowed under 11 U.S.C. § 507(a)(8) – shall receive in full satisfaction, release, and discharge thereof, payment in full in Cash on or as soon as practicable after the Effective Date. The Plan Proponent reserves the right to pay any Allowed Priority Tax Claim, without premium or penalty, by and through alternative means, as follows: (i) other treatment consistent with 11 U.S.C. §§ 1129(a)(9)(C) or (D) including, but not limited to, payment in full within five (5) years from the Petition Date in equal monthly installments commencing on the Effective Date, together with interest accruing at the rate of five percent (5%) per annum; or (ii) such other terms as agreed to among the Debtor or Plan Proponent and the holders thereof.

# ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS

**IV.A.** **Summary of Classification.** All Claims, except for Administrative Expense and Priority Tax Claims, are classified in the Classes set forth in this Article IV. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim qualifies within the description of such other Classes. A Claim is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

| Class | Claims and Interest | Status | Voting Rights |
|---|---|---|---|
| **Class 1 (Priority)** | All Allowed Claims entitled to priority under 11 U.S.C. § 507 (except administrative expense claims under 11 U.S.C. § 507(a)(2)), priority wage claims under 11 U.S.C. § 507(a)(4), and priority tax claims under 11 U.S.C. § 507(a)(8)). Herein, no claims are known to exist. | **Unimpaired** | **Not Entitled to Vote (Deemed to Accept)** |
| **Class 2 (Secured)** | All Allowed Claims secured by a valid, perfected, and enforceable lien that is not subject to avoidance or subordination under the Code or applicable non-bankruptcy law, but only to the extent of the value (determined in accordance with section 506(a) of the Code) of the Claimant's interest in the Debtor's interest in the specific property of the bankruptcy estate to which the lien attaches. To the extent the Bankruptcy Court determines that a Secured Claim should not be classified in the same class with other Secured Claims, such Secured Claim shall be deemed to be placed in its own separate subclass of Class 2 for purposes of the Plan. Herein, the Plan Proponent separates the Holders of Class 2 Claims into two (2) separate subclasses. | **Unimpaired** | **Not Entitled to Vote (Deemed to Accept)** |
| **Class 3 (Unsecured)** | All Allowed Claims against the Bankruptcy Estate, pursuant to 11 U.S.C. § 502 and Article II.1.1 *supra*, that are not Administrative Expense, Priority, Priority Tax or Secured Claims. | **Impaired** | **Entitled to Vote** |

**IV.B.** **Treatment of Each Class of Claims.** The Plan Proponent shall treat the Classes of Claims under this Plan, as follows:

**IV.B.1.**   Class 1: Priority Claims. Class 1 consists of Priority Claims, to the extent such Claims are allowed under 11 U.S.C. § 507(a)(8), as provided by 11 U.S.C. § 1129(a)(9)(C).

**IV.B.1.i.**   **Treatment:** There are **NO** Allowed Priority Claims. Any Class 1 Priority Claim made known in the future shall be paid in full upon the later of the Effective Date or the date on which the Bankruptcy Court allows any such claim by a Final Order.

**IV.B.1.ii.**   **Voting:** Class 1 is **UNIMPAIRED, NOT permitted to vote and deemed to accept this Plan**.

**IV.B.2.**   Class 2(a): JPMorgan Chase Bank, N.A. Class 2(a) consists of the Allowed Secured Claim of JPMorgan Chase Bank, N.A. ("***Chase Bank***"), pursuant to a Retail Installment Sale Contract (Dealer – Simple Interest) ("***Acura Agreement***") for the purchase of a certain 2014 Acura MDX, VIN: xxxxxxxxxxxx5935 ("***Acura***"), and a security interest granted therein. Flatirons Subaru ("***Dealer***") assigned its rights, title and interest in the Acura Agreement to Chase contemporaneously with execution thereof. The Debtor Scheduled Chase Bank to hold a Secured Claim in the amount of $18,542.00, Chase Bank did not file a Proof of Claim on or before the Claims Bar Date, and the *Stipulation for Relief from Stay* ("***Chase Stipulation***") approved on May 1, 2018 provides that "[c]ontingent upon the Debtor completing his Chapter 11 Plan and receiving a discharge, surrender of the [Acura] shall constitute full satisfaction of the Debtor's obligations under the [Acura Agreement]."

**IV.B.2.i.**   **Treatment:** On account of the Allowed Secured Claim in the amount of $18,542.00, Chase Bank shall receive Plan Payments in the amount of $0.00 and hold no right to assert a deficiency claim within the Bankruptcy Case or before any Court of competent jurisdiction arising under this Plan or the Acura Agreement as the Debtor surrendered the Acura in full satisfaction of the Class 2(a) Claim, pursuant to the Stipulation.

**IV.B.2.ii.**   **Voting:** Class 2(a) is **UNIMPAIRED, NOT permitted to vote and deemed to accept this Plan**.

**IV.B.3.**   Class 2(b): VSE Pacific, Inc. Class 2(b) consists of the Allowed Secured Claim of VSE Pacific, Inc. – formerly known as SVO Pacific, Inc. and Scheduled as Vistana Portfolio Services, Inc. – ("***VSE***"), pursuant to a Purchase Money Mortgage Note ("***Note***") executed on or about April 4, 2015 as consideration for a loan to purchase of a fee simple interest in a one-week per annum floating use of "Assigned Unit 310911" at The Westin Princeville, 3838 Wyllie Road, Princeville, Hawaii 96722 ("***Westin Timeshare***"); and contemporaneously granting a security interest therein as VSE perfected by recording the Note, Security Agreement, and Financing Agreement with the State of Hawaii Bureau of Conveyances on May 5, 2015 at Document No. A – 56030251. Pursuant to Proof of Claim No. 20, VSE and the Plan Proponent shall agree that the Timeshare holds a value of $51,233.09.

**IV.B.3.i.** **Treatment:** On account of the Allowed Secured Claim in the amount of $51,233.09, the Plan Proponent shall surrender and re-convey the Bankruptcy Estate's interest in the Westin Timeshare to VSE within thirty (30) days of the Effective Date, by and through a quitclaim deed or other mutually agreeable conveyance instrument, in full satisfaction of the Class 2(b) Claim; VSE shall receive Plan Payments in the amount of $0.00; and VSE shall hold no right to assert a deficiency claim either within this Bankruptcy Case or before any Court of competent jurisdiction arising under this Plan, the Note or other agreements and documents incorporated by reference therein, or other applicable state or federal law.

**IV.B.3.ii.** **Voting:** Class 2(b) is **UNIMPAIRED, NOT permitted to vote and deemed to accept this Plan**.

**IV.B.4.** Class 3: Allowed General Unsecured Claims. Class 3 consists of the Allowed Unsecured Claims against the Debtor including, but not limited to, Secured Claims – to the extent such Claim is Allowed, or a portion thereof – subordinated under 11 U.S.C. §§ 506 and 507(g); and any portion of a Priority Tax Claim arising from assessed penalties and interest that is not compensation for actual pecuniary loss, pursuant to 11 U.S.C. § 507(8)(G). The Plan Proponent estimates that the total sum of Allowed Unsecured Claims – on account of Claims not Scheduled as contingent, disputed and/or unliquidated; Proofs of Claim filed on or before to the Claims Bar Date; and Claims not otherwise Disallowed by the Bankruptcy Court – is the amount of $1,309,720.96.

**IV.B.4.i.** **Treatment:** Holders of Allowed Unsecured Claims shall receive their Pro-Rata Share of the Monthly Disposable Income deposited into the DIP Account on a quarterly basis, as more fully described in Article VIII *infra*. At a minimum, Allowed Unsecured Claimants shall receive no less than $0.21 on the dollar (21.8%). The Plan Proponent refers Holders of Unsecured Claims, regardless of whether Allowed, Disallowed or Disputed, to the Claims Analysis for further detail on the specific amount of Plan Payments distributed to each Holder on a quarterly basis and in total.

**IV.B.4.ii.** **Voting:** Class 3 is **IMPAIRED and entitled to vote to accept or reject the Plan.**

**IV.C.** **Unimpaired Claim.** Except as otherwise provided, nothing under this Plan shall affect the rights of the Debtor or the Plan Proponent, as applicable, in respect to any Unimpaired Claim, including all legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims. Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under this Plan.

# ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

**V.A.**   **Disputed Claim.** A Disputed Claim is a Claim that has not been Allowed or Disallowed by a Final Order, and as to which a Proof of Claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection.

**V.B.**   **Bar Date for Filing Objections to Claims.** The Plan Proponent shall further review all Proofs of Claim filed within the Bankruptcy Case and, should the need arise after the Effective Date, shall hold, retain and reserve the exclusive right, power and authority to investigate and assert any and all rights and defenses with respect to any Claim including, but not limited to, as follows: (i) file a Proof of Claim on behalf of a creditor under FED.R.BANKR.P. 3004, in accordance with the time parameters set forth in FED.R.BANKR.P. 3002 and 3003; and/or (ii) file with the Bankruptcy Court and serve upon the Holder of each such Claim any objections to allowance thereof as soon as practicable, but in no event later than the Claim Objection Deadline, notwithstanding an order of the Court extending such deadline.

**V.C.**   **Settlement of Disputed Claim(s).** The Plan Proponent shall hold, retain and reserve the exclusive power and authority to settle and compromise any and all Disputed Claim(s). Any settlement of a Disputed Claim that arises on or after the Effective Date, and provides for an Allowed Claim in the amount of $25,000.00 or less, shall require the Plan Proponent to neither provide notice to Claimants nor seek approval from the Bankruptcy Court, pursuant to FED.R.BANKR.P. 9019(b). With respect to any settlement of a Disputed Claim that provides for an Allowed Claim in an amount greater than $25,000.00, the Plan Proponent shall serve notice upon all persons that have specifically requested notice in writing within the Bankruptcy Case. Such notice shall set forth a fourteen (14)-day objection deadline and, if no written objection to the proposed settlement is submitted to the Plan Proponent on or before 11:59 p.m. prevailing Mountain Standard Time of the fourteenth day, such settlement shall be conclusively approved. If a party submits an objection to the Plan Proponent, such objector and the Plan Proponent shall meet and confer to reach a consensual resolution within 14-days of the Plan Proponent receiving the objection; and, absent reaching resolution, the Plan Proponent shall move for the Bankruptcy Court to approve any such settlement and/or compromise, pursuant to FED.R.BANKR.P. 9019, subject to notice served upon the objecting party.

**V.D.**   **Delivery of Distributions.** The Plan Proponent shall distribute and deliver to Holders of Allowed Unsecured Claims Plan Payments on a quarterly basis, and no later than fourteen (14) days after January 15, April 15, June 15 and September 15 of each year, the Monthly Disposable Income – or to the extent of Available Cash subject to risk factors including, but not limited to, reduction of wages earned due to disability or undue hardship – deposited and maintained within the DIP Account, as follows: (a) at the addresses set forth in the Proofs of Claim; (b) at the addresses reflected in the Schedules for any Claimant that did not file a Proof of Claim; OR (c) at the addresses set forth in written notices of address change filed within the Bankruptcy Case and/or submitted to the Plan Proponent after the filing of either the Schedules or the relevant Proof of Claim.

**V.E.**    **Unclaimed Distributions.** If any distribution to a Claimant is returned as undeliverable, the Plan Proponent shall distribute no further Plan Payments to such Claimant unless and until the Claimant notifies the Plan Proponent, in writing, of a current address, at which time the Plan Proponent shall tender all missed distributions to the Claimant without penalty and/or interest. The Plan Proponent must receive any and all claims for undeliverable or uncashed distributions on or before the first (1st) anniversary of the date applicable to such distribution, or with respect to the final distribution, within ninety (90) days thereof. AFTER SUCH DATE, ALL SUCH UNCLAIMED PROPERTY WILL REVERT TO THE PLAN PROPONENT FOR THE BENEFIT OF REMAINING CLAIMANTS, AND THE CLAIM OF ANY CLAIMANT OR SUCCESSOR TO SUCH CLAIMANT WITH RESPECT TO SUCH PROPERTY SHALL BE DISCHARGED AND FOREVER BARRED, NOTWITHSTANDING ANY FEDERAL OR STATE ESCHEAT LAW TO THE CONTRARY.

**V.F.**    **Estimation of Claims.** For purposes of making distributions provided for under the Plan, the Plan Proponent may estimate all Disputed Claims at an amount equal to (a) such lesser amount that is agreed to by the Holder of such claim, (b) the amount claimed if the Bankruptcy Court has not made an estimation of such claim or the Holder of such claim has not agreed to a lesser amount, or (c) the amount, if any, determined by the Bankruptcy Court pursuant to 11 U.S.C. § 502(c) as an estimate for distribution purposes. In any event, the estimated amount shall be the maximum amount of the Claim for distribution purposes under this Plan and any order of the Bankruptcy Court estimating the Claim shall also set the maximum amount of the Claim if it becomes an Allowed Claim. The Plan Proponent shall reserve any and all Monthly Disposable Income otherwise distributed to the remaining Administrative Expense Claim of Berken Cloyes, P.C. as the Available Cash sufficient to pay the Estimated Claim(s), when and if they become Allowed Claims. Within thirty (30)-days of the Claim Objection Deadline concluding, the Plan Proponent shall commence monthly payments to the remaining Administrative Expense Claimant and deliver a revised Claims Analysis to each Holder of an Allowed Unsecured Claim that shall disclose the final calculation of quarterly and total Pro Rata Share of Plan Payments each Claimant shall receive on account of their Claim. Notwithstanding anything herein to the contrary, the Plan Proponent shall make no distributions on account of any Claim so estimated until such claim is an Allowed Claim.

**V.G.**    **Distribution on Disputed Claims.** The Plan Proponent shall make no distribution on account of a Disputed Claim unless, and until, any such Claim is Allowed.

**V.H.**    **Plan Payments on Disputed Claims.** The Plan Proponent shall be deemed to distribute any Plan Payment(s) to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, in a timely manner on and after the Effective Date.

**ARTICLE VI**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**VI.A.**    **Assumed Contracts.** The Plan Proponent shall assume only certain and specific Executory Contracts and Unexpired Leases expressly identified within Section VI of the

18

Disclosure Statement. In addition, fourteen (14) days after the Effective Date, any Executory Contracts or Unexpired Leases not expressly assumed shall be conclusively rejected, irrespective of whether listed within this Plan, to the extent permitted by applicable law. Notwithstanding the specific treatment of Executory Contracts and/or Unexpired Leases more fully described hereinafter, the Plan Proponent retains the right to alter, amend, modify or supplement the rights, obligations and treatment provided under any such Executory Contracts and/or Unexpired Leases, subject to consent and an agreement in writing with the contracting party approved by an Order of the Court.

**VI.B.**   **Rejected Contracts.** The Plan Proponent shall be deemed to have conclusively rejected any and all Executory Contracts and Unexpired Leases not expressly assumed within Section VI of the Disclosure Statement, which shall be incorporated by reference herein. A PROOF OF A CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE UNDER THIS SECTION MUST BE FILED NO LATER THAN THIRTY (30) DAYS AFTER THE EFFECTIVE DATE. ANY PROOF OF CLAIM FILED AFTER SUCH DATE SHALL BE CONCLUSIVELY BANNED FOREVER BARRED.

**VI.C.**   **Personal Guaranties of Business-Related Contracts and Leases.** Any and all claims arising from a personal guaranty of an Executory Contract or Unexpired Lease executed by a business entity that the Debtor either managed prior to the Petition Date or has continued to manage during the Bankruptcy Case are not subject to the rights and obligations imposed under 11 U.S.C. § 365. In lieu thereof, the Plan Proponent shall treat any such Claims, to the extent Allowed, among the Class of Allowed Unsecured Claims in accordance with Article IV.B.4 *supra*.

**VI.D.**   **Reservation of Rights.** Nothing in this Plan shall constitute an admission by the Debtor and/or the Plan Proponent that any particular contract or agreement is in fact an Executory Contract or Unexpired Lease, or that the Debtor and/or the Plan Proponent have any liability thereunder. Should any dispute arise regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Plan Proponent shall have thirty (30) days following the Bankruptcy Court entering a Final Order resolving such dispute to alter and/or provide appropriate treatment of such contract or lease.

**VI.E.**   **Assignment.** The Debtor is deemed to assign any Executory Contract or Unexpired Lease assumed herein, or otherwise assumed throughout the course of this Bankruptcy Case, to the Plan Proponent pursuant to 11 U.S.C. § 365, if the Debtor did not expressly assign such contract or lease to a third party previously within the Bankruptcy Case.

**VI.F.**   **Nonoccurrence of Effective Date.** In the event the Effective Date does not occur, the Court shall retain jurisdiction with respect to any request by the Debtor to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases, pursuant to 11 U.S.C. § 365(d)(4).

**ARTICLE VII**
**MEANS FOR IMPLEMENTATION AND DISTRIBUTION OF PLAN PAYMENTS**

**VII.A.**  **General Settlement of Claims.** Pursuant to 11 U.S.C. § 1123 and FED.R.BANKR.P. 9019, and in consideration for the classification, distributions, releases, and other benefits provided, upon the Effective Date, the provisions hereunder shall constitute a good faith compromise and settlement of all Claims, Causes of Action, and any other controversies, interests or obligations released, settled, compromised, or otherwise resolved pursuant to this Plan. The Plan shall be deemed a motion to approve such good faith compromises and settlements thereof; and the entry of the Confirmation Order shall constitute the Bankruptcy Court approving such compromises and settlements as being fair, equitable, reasonable, and in the best interests of the Debtor and the Bankruptcy Estate, pursuant to 11 U.S.C. § 1123 and FED.R.BANKR.P. 9019. The distributions made to Holders of Allowed Claims in any Class are intended to be final.

**VII.B.**  **Vesting of Assets in Plan Proponent on the Effective Date.** On the Effective Date, the Plan Proponent shall retain any and all Assets of the Bankruptcy Estate. Subject to terms of this Plan, the Plan Proponent shall forever control and own the Assets of the Bankruptcy Estate free and clear of all liens, claims, interests, and encumbrances arising on or before the Effective Date.

**VII.C.**  **Continued Maintenance of DIP Account.** The Plan Proponent shall continue to maintain the DIP Account, and use such depository account to preserve deposits of Monthly Disposable Income and orderly distribute Plan Payments to Holders of Allowed Unsecured Claims until the until the earlier of: (a) the Bankruptcy Court granting the Debtor a discharge upon the Plan Proponent completing all Plan Payments or (b) the Bankruptcy Court entering a Final Order within the Bankruptcy Case of dismissal or conversion to another chapter of the Bankruptcy Code.

**VII.D.**  **Separation of Plan Payments and Family Expenses.** On or after the Confirmation Date, and no later than the Effective Date, the Plan Proponent shall open the Family Expense Account; deposit therein any and all wages, income and other Cash earned and received and generated beyond the Monthly Disposable Income deposited into the DIP Account; and maintain the Family Expense Account to pay for ordinary and necessary expenses incurred up to and through the closure of this Bankruptcy Case. As applicable, and if necessary, the attach monthly statements for the Family Expense Account shall be attached to any quarterly report(s) submitted to the U.S. Trustee and/or filed within the Bankruptcy Case from the Effective Date through closure of the Bankruptcy Case.

**VII.E.**  **Sources of Consideration for Funding Plan Payments.** The Plan Proponent shall fund the Plan using Cash generated from one, or a combination of such sources, as follows:

**VII.E.1.**  Post-Petition Income Maintained Within DIP Account. Post-Petition Income maintained within the DIP Account as of the Effective Date shall be distributed to Holders of Priority Tax and Administrative Expense Claims in full, or the Allowed portion thereof, on or before fourteen (14) days following the Effective Date in such order, as follows: (a) Priority Tax Claim of the United States Internal Revenue Service, (b) Priority Tax Claim of the

20

Colorado Department of Revenue, (c) Administrative Expense Claim of DENNIS & COMPANY, P.C., (d) Administrative Expense Claim of BROCK AND COMPANY, CPAS, P.C.; and (e) Administrative Expense Claim of BERKEN CLOYES, P.C., with the balance thereof paid as monthly installments in the amount of Five Hundred Dollars ($500.00) commencing on the Effective Date, notwithstanding Article V.6 to the contrary.

**VII.E.2.** <u>Post-Effective Date Monthly Disposable Income</u>. Monthly Disposable Income in the amount of $4,770.00 deposited into the DIP Account no later than three (3)-Business Days after receiving the second (2nd) pay advice of each month for sixty (60)-months, commencing on the Effective Date, shall fund Plan Payments to Holders of Allowed Unsecured Claims in accordance with the quarterly payment amounts enumerated within the Claims Analysis and subject to the terms provided within this Plan.

**VII.E.3.** <u>Pursuing Avoidance Actions and Other Causes of Action</u>. The Plan Proponent shall deposit into the DIP Account any funds recovered and collected on account of any judgment rendered in his favor within Avoidance Action(s) and/or if pursuing any other Causes of Action arising from transactions and occurrences that became known prior to the Petition Date and the Debtor Scheduled, less any reasonable fees and costs incurred to Professionals representing the Plan Proponent therein. Such Net Available Cash of funds recovered and/or Bankruptcy Estate Assets returned shall be used in such order, as follows: (1) pay any remaining balance due and owing to Berken Cloyes, P.C. as Holder of an Administrative Expense Claim and (2) disburse the remainder to Holders of Allowed Unsecured Claims on a Pro-Rata Basis.

**VII.E.4.** <u>Claims Payable by Third-Parties</u>. As the Debtor personally guaranteed the debts of the Business Entities prior to the Petition Date, such companies shall remain obligated to Holders of Allowed Claims for any portion remaining due and owing after the Plan Proponent has distributed all Plan Payments hereunder. Notwithstanding any provision of this Plan, Final Order of the Bankruptcy Court or an agreement by and between any Holder of an Allowed Unsecured Claim and the Business Entities to the contrary, the Business Entities shall receive the same protections afforded to the Debtor and Plan Proponent for the remainder of this Plan and shall become subject to any responsibilities or obligations incurred prior to the Petition Date on the first day after the Bankruptcy Case is closed, dismissed or converted to another chapter of the Bankruptcy Code.

**VII.E.5.** <u>Liquidation of Non-Exempt Assets When Necessary</u>. With respect to Assets of the Bankruptcy Estate, or the portion thereof, not Scheduled as exempt pursuant to the applicable provisions of the United States Code and Colorado Revised Statutes, the Plan Proponent shall hold, retain and reserve the sole right and authority to liquidate and convert to cash all such non-exempt Assets, and distribute the proceeds thereof in accordance with the provisions of this Plan, subject to any notice and hearing requirements under the Bankruptcy Code. The Plan Proponent shall exercise such rights only if the

Net Available Cash deposited into the DIP Account on any month for the sixty (60)-months following the Effective Date is less than the Monthly Disposable Income amount as reasonable business judgment dictates against liquidation when considering the costs of sale for liquidating Assets holding nominal values. Notwithstanding any provision hereunder to the contrary, any liquidation of the Bankruptcy Estate's interest in the Business Entities shall require any agreement for the purchase and sale thereof to provide for employment of the Debtor as the medical director of the Business Entities for no less than five (5) years from the date of any purchase and sale as such professional practices require his participation to generate revenue. The Plan Proponent shall also hold, retain and reserve the sole right and authority, subject to any notice and hearing requirements under the Bankruptcy Code, to abandon and/or surrender any Assets deemed, in the exercise of reasonable business judgment, burdensome or of inconsequential value and no benefit.

**VII.F.** <u>**Timing and Calculation of Amounts Distributed to Allowed Unsecured Claimants.**</u> Except as otherwise provided in this Plan, on the Effective Date, or if a Claim is not Allowed as of the Effective Date then on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter, each Holder of an Allowed Unsecured Claim shall receive their Pro Rata Share of the Monthly Disposable Income, as the full amount distributed to the Class of Allowed Unsecured Claims, in quarterly installments distributed within fourteen (14) days after January 15, April 15, June 15 and September 15 of each year arising within the sixty (60) month period to commence on the Effective Date and continuing on the same date of each quarter thereafter for five (5) years. In the event that any such quarterly dates arise on a date other than a Business Day, the Plan Proponent shall distribute the Plan Payments or perform any act under this Plan on the next succeeding Business Day but shall be deemed to have been completed as of the required date. The Plan Proponent shall distribute Plan Payments on account of Disputed Claims, if any, pursuant to the provisions set forth in Article V of this Plan. Except as otherwise provided in this Plan, Holders of Allowed Claims shall not be entitled to interest on the distributions provided for in this Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date. Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim payable in accordance with this Plan or other Final Order.

**VII.G.** <u>**Manner of Plan Payments.**</u> The Plan Proponent shall distribute the Plan Payments in Cash by check, wire transfer or Electronic Funds Transfer (EFT), with the Plan Proponent holding the sole and exclusive discretion as to the exact manner used and the right to substitute one mechanism for another between the quarterly payments without seeking authorization from any Claimant or interested party or approval by the Bankruptcy Court.

**VII.H.** <u>**No Post-Petition Interest on Claims.**</u> Unless otherwise specifically provided for in this Plan, the Confirmation Order, the Disclosure Statement, a Final Order, documents executed in accordance with this Plan, or as required by any applicable provision of the Bankruptcy Code or under the Bankruptcy Rules, post-petition interest shall neither accrue nor be paid to Holders of Claims – regardless of status as Allowed, Disputed,

Disallowed or Impaired and having voted to accept or reject the Plan – and Scheduled persons, entities creditors, debts or interested parties on any Claim(s) and no such Claimant, creditor or interested party shall be entitled to interest accruing on or after the Petition Date on any such Claim.

**VII.I.** **Effectuating Post-Confirmation Order Documents and Transactions.** The Plan Proponent shall be authorized to and may issue, execute, deliver, file or record any contracts, instruments, releases, among other agreements or documents, and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorization, or consents, to the extent allowed under the Bankruptcy Code and except for those expressly required under this Plan.

**VII.J.** **Employing Professionals Post-Confirmation.** The Plan Proponent may retain any Professionals including, but not limited to, legal counsel, accountants, advisors, professionals or other persons as he deems necessary to assist fulfilling or to exercise any of his rights and powers afforded hereunder; regardless of whether any such person is related to or an insider of the Plan Proponent, or otherwise affiliated with the Debtor, the Bankruptcy Estate or the Bankruptcy Case in any manner, except if any such Professional has represented any Claimant, creditor or other interested party other than any person or entity retained as an expert witness. To the extent he is licensed and capable of doing so, the Plan Proponent may serve as his own attorney, accountant, tax specialist and/or render other professional services in conjunction with any of the rights, powers and duties enumerated under this Plan.

    **VII.J.1.** Compensation for Professional Services Rendered. The Plan Proponent shall pay reasonable compensation to any and all Professionals retained to assist with fulfilling his rights and responsibilities hereunder, for services rendered at a rate reflecting actual time billed by such Professionals on an hourly basis, in six minute increments, at the standard billing rates for such services in effect at the time of service or such other rate of compensation that is reasonable; and shall reimburse such Professionals for any and all reasonable out-of-pocket expenses incurred as an expense of the Plan Proponent. The Plan Proponent shall pay for such post-confirmation services and expenses from Cash deposited into the Family Expense Account without the need for approval of the fees and costs incurred or authorization of payment thereof from the Bankruptcy Court.

**ARTICLE VIII**
**EFFECT OF PLAN CONFIRMATION**

**VIII.A.** **Preservation of Claims, Demands and Causes of Action Against Third-Parties.** All claims, demands and Causes of Action held by, through or on behalf of the Debtor or the Bankruptcy Estate against any other person are hereby preserved in full unless otherwise provided by this Plan; and no provision of this Plan shall impair the rights of the Plan Proponent with respect to such claims, demands and/or Causes of Action, or to prosecute or defend against any such preserved claims, demands and Causes of Action

**VIII.B.**   <u>**Discharge of Claims Against the Debtor.**</u> Within thirty (30) days of the Plan Proponent filing a notice of completion of all Plan Payments, the Debtor shall request, after notice pursuant to L.B.R. 9013, that the Bankruptcy Court enter an Order of Discharge of all debts of, Claims against and liens on the Debtor, his Assets and the Bankruptcy Estate, arising at any time before the Effective Date, regardless of whether a Proof of Claim with respect to thereto was filed, whether the Claim is Allowed, or whether the Holder thereof votes to accept the Plan or is entitled to receive a distribution hereunder, pursuant to 11 U.S.C. § 1141(d)(5). Except as otherwise expressly specified in the Plan, the Confirmation Order or any other Final Order of the Bankruptcy Court, as of the Effective Date: (a) Claimants shall acknowledge and accept the rights and treatment afforded in this Plan as consideration for and in complete satisfaction, discharge, and release of all Claims against the Debtor and/or the Bankruptcy Estate of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date; (b) this Plan shall bind all Holders of Claims against the Debtor and/or the Bankruptcy Estate, notwithstanding whether any such Holders failed to vote to accept or reject this Plan or voted to reject this Plan; (c) the Debtor shall be deemed discharged and released, to the fullest extent allowed under the Bankruptcy Code, from any and all Claims against the Debtor and/or the Bankruptcy Estate, of any kind or nature whatsoever, and all such Claims shall be deemed satisfied, discharged, and released in full, and the Debtor's liability with respect thereto shall be extinguished in the entirety, including any liability of the kind specified under 11 U.S.C. § 502(g); and (d) any Holder of such discharged Claim shall be precluded from asserting any other or further Claim against the Debtor, Plan Proponent, any of the Assets or Bankruptcy Estate, based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the Effective Date.

**VIII.C.**   <u>**Releases and Exculpation.**</u> As of the Effective Date, each Holder of a Claim, whether Disputed, Disallowed or Allowed, creditor scheduled or interested party afforded notice of the Bankruptcy Case is deemed to have released and discharged the Debtor from any and all Causes of Action, whether known or unknown, that such person or entity would have been legally entitled to assert whether individually or collectively, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, transactions and occurrences related to management, operations and affairs of business entities for which the Debtor controls a membership or ownership interest, the Bankruptcy Case, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, or any transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, or the filing of the Bankruptcy Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that notwithstanding anything to the contrary herein, nothing in this Article or this Plan shall release (a) any post-Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement executed to implement the Plan; (b) any Administrative Expense Claims pursuant to 11 U.S.C. §§ 503(b) or 507(a)(2); or (c) any and all setoff, subrogation, recoupment, or other similar legal or equitable right held by the Debtor against any

person or entity. Entry of the Confirmation Order shall constitute approval of the releases described herein by Bankruptcy Court, pursuant to FED.R.BANKR.P. 9019, and shall constitute a finding that the Debtor obtains the releases described herein (a) in exchange for good and valuable consideration provided under this Plan, a good faith settlement and compromise; (b) in the best interests of the Debtor and all Holders of Claims and Causes of Action; (c) is fair, equitable, and reasonable; and (d) given and made after due notice and opportunity for hearing.

**VIII.D.** **Injunction.** Except as otherwise provided herein, within the Disclosure Statement, under the Confirmation Order or any other Final Order, to the fullest extent allowed under 11 U.S.C. §§ 105, 362 and 524, among other applicable provisions of the Bankruptcy Code, and to the fullest extent authorized by applicable state and federal law, all persons and entities who have held, hold, or may hold Causes of Action, Claims, or interests that have been Scheduled, compromised, settled, released, or subject to exculpation are: (a) permanently enjoined ~~from~~and forever barred, commencing on ~~and after~~ the Effective Date ~~up to and through the date the Bankruptcy Case is closed~~, from taking certain and specific actions against, as applicable, the Debtor, the Plan Proponent, the Assets~~, the Bankruptcy Estate and co-debtor Business Entities — as affording protections to the nonbankrupt co-debtor(s) shall foster compliance with all rights, responsibilities and obligations under this Plan~~ and the Bankruptcy Estate as follows: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claim, debts or interests incurred prior to the Petition Date; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claims, debts or interests; (iii) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claims, debts or interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims, debts or interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims, debts or interests released, exculpated or settled pursuant to the Plan or a Final Order within the Bankruptcy Case; ~~(b) permanently enjoined and forever barred from taking any of the actions described above, commencing on the Effective Date, against the Debtor, the Plan Proponent and the Bankruptcy Estate and any protections afforded to the nonbankrupt co-debtor business entities shall cease to exist on the date the Bankruptcy Case is closed, dismissed or converted to another chapter under the Bankruptcy Code; and (c~~(b) notwithstanding anything to the contrary herein, nothing in this Plan shall enjoin: (i) any person or entity from taking the preceding actions with respect to any post-Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement executed to implement the Plan; or (ii) any and all setoff, subrogation, recoupment, or other similar legal or equitable right held by the Debtor against any person or entity. Upon entry of the Confirmation Order, all Holders of Claims, persons or entities that the Debtor disclosed within the Schedules and/or any interested parties afforded notice of this Bankruptcy Case and their respective agents, officers, affiliates, successors and assignees shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. By accepting,

or being eligible to accept, distributions under this Plan, each Holder of an Allowed Claim shall be deemed to have consented to the injunction provisions set forth hereunder.

**VIII.E.**   **Setoffs.** Except as otherwise expressly provided for in this Plan, the Plan Proponent shall hold the right to set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim – before any distribution is made on account thereof – any rights and Causes of Action of any nature that the Debtor or Plan Proponent, as applicable, may hold against such Allowed Claimant, to the extent such rights or Causes of Action against such Holder have not been otherwise compromised or settled on or before the Effective Date whether under this Plan or otherwise, pursuant to 11 U.S.C. § 553, other applicable provisions of the Bankruptcy Code, applicable non-bankruptcy law, or as may be agreed to by the Debtor or Plan Proponent and Holder of a Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Plan Proponent of any such rights or Causes of Action, and legal or equitable defenses that the Debtor may have possessed or the Plan Proponent possesses against such Holder. In no event shall any Claimant be entitled to set off any Claim against any right or Cause of Action of the Debtor or Plan Proponent, as applicable, unless such Holder timely filed a Proof of Claim with the Bankruptcy Court preserving such setoff provided, that the foregoing shall not prevent any Holder of a Claim from asserting setoff rights as an affirmative defense to the extent provided by applicable law.

**VIII.F.**   **Protection Against Discriminatory Treatment.** Pursuant to 11 U.S.C. § 525, and consistent with paragraph 2 of Article VI of the United States Constitution, no governmental unit shall discriminate against the Debtor or Plan Proponent, as the reorganized entity, as applicable, or any entity or person with which the Debtor or Plan Proponent has been or is associated, solely because the Debtor or Plan Proponent was a debtor under Chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of, or during, the Bankruptcy Case but before such Debtor or Plan Proponent was granted a discharge, or has not paid a debt that is dischargeable in the Bankruptcy Case.

**VIII.G.**   **Release of Liens.** Except as otherwise provided herein, the Confirmation Order, or in any contract, instrument, release or other agreement or document created, pursuant to or as contemplated under this Plan; all mortgages, deeds of trust, liens, pledges or other interests secured against any property of the Bankruptcy Estate shall be fully released, settled and discharged, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, liens, pledges or other security interests shall revert to the Debtor or the Plan Proponent, as applicable, on the Effective Date.

**ARTICLE IX**
**PLAN MODIFICATION, REVOCATION OR WITHDRAWAL**

**IX.A.**   **Modification.** The Plan Proponent reserves the right to amend or modify this Plan before the entry of the Confirmation Order; and, after entry of the Confirmation Order, may amend or modify the Plan to remedy any defect or omission, or reconcile any inconsistency, in the Plan, as may be necessary to carry out the purpose and intent of the

Plan, in accordance with 11 U.S.C. § 1127(b). Entry of the Confirmation Order shall mean that all modifications or amendments to this Plan occurring after the solicitation thereof are approved pursuant to 11 U.S.C. § 1127(a) and shall not require additional disclosure or re-solicitation under Fed.R.Bankr.P. 3019.

**IX.B.**    **Revocation or Withdrawal.** The Plan Proponent reserves the right to revoke or withdraw this Plan before the Confirmation Date and file a subsequent and/or amended chapter 11 plan of reorganization thereafter. If the Plan Proponent revokes or withdraws the Plan, or if Confirmation or Consummation does not occur with respect to the Plan, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto shall be null and void in all respects; and (c) nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims by or against the Debtor, (ii) prejudice in any manner the rights of the Debtor or (iii) constitute an admission, acknowledgment, offer or undertaking by the Debtor in any respects.

**IX.C.**    **Nonoccurrence of Confirmation.** If this Plan is not confirmed, the Plan Proponent reserves the right to (a) file and seek confirmation of a further and future amended plan of reorganization and/or (b) seek to withdraw this Plan. The inability to have this Plan confirmed, or the election to withdraw this Plan, shall not impair the Confirmation of any amended plan of reorganization filed in the future and as further amended if necessary.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

**X.A.**    **Reservation of Rights.** The Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtor or the Plan Proponent, as applicable, with respect to the Plan, Disclosure Statement or Confirmation Order, shall be deemed an admission or waiver of any rights of the Debtor, the Plan Proponent or the Bankruptcy Estate with respect to Holders of Claims Scheduled creditors before the Effective Date.

**X.B.**    **Effective Date.** The Effective Date of this Plan is the first day of the first month following the fifteenth (15th) Business Day after the Confirmation Date or, if a stay of the Confirmation Order is in effect on that date, the first (1st) Business Day after that date on which no stay of the Confirmation Order is in effect provided that the Confirmation Order has not been vacated.

**X.C.**    **Immediate Binding Effect.** Subject to the terms of this Plan, and notwithstanding Fed.R.Bankr.P. 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan   and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor, the Bankruptcy Estate, the Plan Proponent, any and all Holders of Claims, regardless of whether such Claim(s) are deemed to have accepted or rejected the Plan, all persons and/or entities that are parties to or are subject to settlements, compromises, releases, injunctions or acquiring

27

property described in and under the Plan, all persons Entity acquiring property under the Plan or the Confirmation Order, any and all parties to Executory Contracts and Unexpired Leases with the Debtor; parties and entities Scheduled as a creditor, to have incurred a debt or to hold an interest within the Bankruptcy Case. The rights and obligations of any such persons, entities and/or Holders of Claims will be binding upon, and inure to, the benefit of the successors or assigns of such person, entity or Claimant. All Claims and debts shall be deemed fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Claimant or Scheduled creditor has voted on the Plan.

**X.D.**   **Additional Documents.** On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, with the consent of such person, entity or Claimant named within, agreeing to and executing any such agreement(s). Upon the Effective Date, the Plan Proponent and all Holders of Allowed Claims receiving distributions pursuant to the Plan, among any and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan, without the need to consult or seek approval from the Bankruptcy Court, unless any such agreement(s) or document(s) that would affect the amount of Monthly Disposable Income deposited into the DIP Account, Pro Rata Share distributed therefrom and orderly distribution of such Plan Payments; and notwithstanding any provisions of the Bankruptcy Code or the Bankruptcy Rules to the contrary including, but not limited to, settlement of any Avoidance Actions under FED.R.BANKR.P. 9019.

**X.E.**   **Terms of Injunctions or Stays.** Unless otherwise provided hereunder or in the Confirmation Order, all injunctions or stays in effect in the Bankruptcy Case, pursuant to the Bankruptcy Code or any order of the Bankruptcy Court, shall remain in full force and effect until the Effective Date. All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**X.F.**   **Enforcement of Confirmation Order.** On and after the Effective Date, the Plan Proponent, as applicable, shall hold, reserve and retain the sole right, responsibility and authority to enforce the terms of the Confirmation Order and the Plan by and through, *inter alia*, seeking relief from any court of competent jurisdiction.

**X.G.**   **Waiver and Estoppel.** Each Holder of a Claim be deemed to have waived any right to assert any argument, including the right to argue that its Claim should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtor or any other person, entity or agent of the Debtor either prior to the Petition Date or within the Bankruptcy Case, if such agreement was not disclosed in the Plan, the Disclosure Statement, Schedules, Proof of Claim, or any and all other documents and pleadings filed within the Bankruptcy Case or an ancillary proceeding thereof before the Confirmation Date.

**X.H.**   **Successors and Assigns.** The rights, benefits, and obligations of any person or entity named or referred to in this Plan, the Disclosure Statement as incorporated by reference

into and supplementing this Plan, and the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each person or entity.

**X.I.**    **Creditor Default.** An act or omission by a Holder of a Claim contrary to the provisions of this Plan shall be deemed an event of default under this Plan. Upon an event of default, the Debtor or Plan Proponent, as applicable, may seek to hold the defaulting party in contempt of the Confirmation Order and shall be entitled to reasonable attorneys' fees and costs of the Debtor or Plan Proponent in remedying such default. Upon the finding of such a default by a creditor, the Bankruptcy Court may: (a) designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with FED.R.BANKR.P. 7070; (b) enforce the Plan by order of specific performance; (c) award judgment against such defaulting creditor in favor of the Debtor or Plan Proponent, as applicable, in an amount, including interest, to compensate the Debtor or Plan Proponent for the damages caused by such default; and (d) make such other order as may be equitable that does not materially alter the terms of the Plan.

**X.J.**    **Entire Agreement.** Except as otherwise indicated, the Plan, the Disclosure Statement and the Confirmation Order, together with any exhibits, addendums and/or documents attached thereto, supersede previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

**X.K.**    **Severability.** If the Bankruptcy Court, or any court of competent jurisdiction, determines that any provision in this Plan is unenforceable, such determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**X.L.**    **Captions.** The headings contained in this Plan are for convenience of reference only and shall not affect the meaning or interpretation of this Plan.

**X.M.**    **Service of Notices and Documents.** Any and all notices, requests, demands, objections, and responses, among any other pleadings or documents that this Plan requires effectuating service or delivery upon the Plan Proponent, and all other communications permitted under this Plan; must be submitted in writing to the parties necessary to notify; and the Plan Proponent shall be deemed to receive each and every communication upon delivery, with a courtesy copy submitted to counsel for the Debtor by First-Class U.S. Mail postage pre-paid or electronic means, at such address as follows:

To the Plan Proponent at:    Dr. W. Rafer Leach, M.D.
RE: *In re Leach*, Case No. 17-18112 TBM
2480 West 26th Avenue, Suite 90-B
Denver, CO 80211

With a copy to counsel at:    Joshua B. Sheade, Esq.
BERKEN CLOYES, P.C.
1159 Delaware Street
Denver, Colorado 80204

– AND/OR –

E-mail: joshua@berkencloyes.com

> **X.M.1.** Post-Confirmation Service Upon Creditors. After the Effective Date, the Plan Proponent shall limit the list of persons, entities, creditors and Claimants receiving notices and documents to those whom have requested to receive notice within the Bankruptcy Case and those that file any such request with the Bankruptcy Court hereafter, pursuant to FED.R.BANKR.P 2002.

> **X.M.2.** Failure to Provide Forwarding Address. Any Holder of an Allowed Claim, regardless of whether a person or entity, entitled to receive a payment or distribution pursuant to this Plan, that fails to negotiate a check, accept a distribution or notify the Plan Proponent of a forwarding address on or before the first (1st) anniversary of the date applicable to such distribution or change of address, or with respect to the final distribution, within ninety (90) days thereof, SHALL BE DEEMED TO HAVE RELEASED THE PLAN PROPONENT, ABANDONED ANY RIGHT TO PAYMENT OR DISTRIBUTION UNDER THE PLAN, DISCHARGED AND FOREVER BARRED, NOTWITHSTANDING ANY APPLICABLE FEDERAL OR STATE LAW TO THE CONTRARY.

**X.N.** **Votes Solicited in Good Faith.** Upon entry of the Confirmation Order, the Debtor and Plan Proponent, as applicable, will be deemed to have solicited votes on the Plan in good faith and in compliance with any applicable provision of the Bankruptcy Code including, but not limited to, 11 U.S.C. § 1125 and, therefore, neither the Debtor, Plan Proponent nor any agents thereof, will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

**X.O.** **Confirmation by Non-Acceptance Method.** The Plan Proponent hereby requests, if necessary, confirmation of the Plan pursuant to 11 U.S.C. §§1129(a)(15) and (b), with respect to any Impaired Class of Claims that does not vote to accept the Plan.

**X.P.** **Retention of Jurisdiction.** Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Bankruptcy Case and all matters arising out of, or related to, the Bankruptcy Case and/or the Plan including, but not limited to, as follows: (a) hear and determine any dispute arising under the Plan; (b) enter and make any such Orders as are necessary or appropriate to carry out the provisions of the Plan; (c) enter and make any such Orders as may be appropriate under 11 U.S.C. § 1142; (d) adjudicate all claims objections filed by the Debtor, Plan Proponent or other interested parties in accordance with this Plan; (e) consider and enter Orders on post-confirmation amendments to this Plan, if any, as requested under 11 U.S.C. § 1127; (f) hear and determine all fee applications or requests for approval of Administrative Expense Claims; (g) enforce Orders previously entered by the Court; (h) correct any defect, cure any omission or reconcile any inconsistency in the Plan or Confirmation Order as may be necessary to carry out the purposes and intents of the Plan; and (i) fully and finally adjudicate any Causes of Action, contested matters and/or adversary proceedings deemed "core proceedings" under 28 U.S.C. §§ 157(b)(2) and 1334

and/or for which the parties thereto have consented to the authority of the Bankruptcy Court to enter final order(s) and judgment in accordance with *Executive Benefits Ins. Agency v. Arkinson (In re Bellingham)*, 134 S.Ct. 2165 (2014); *Wellness Int'l Network Ltd., v. Sharif*, 135 S.Ct. 1932 (2015); and FED. R. BANKR.P. 7008(a) and 7012(b).

**X.Q.**  **Completion of Plan Payments.** Upon completing orderly distribution of Plan Payments to Holders of Allowed Claims hereunder and fully administering the Bankruptcy Estate in accordance with this Plan, the Disclosure Statement, the Confirmation Order and any other applicable Final Order; the Plan Proponent shall file a statement with the Bankruptcy Court to that effect at least thirty (30) days before seeking a final decree.

DATED this ~~17th~~12th of ~~April~~June, 2019.

Respectfully submitted,
DR. W. RAFER LEACH, M.D.

By:  Dr. W. Rafer Leach, M.D.,
Chapter 11 Plan Proponent

APPROVED AS TO FORM:
BERKEN CLOYES, P.C.

Joshua B. Sheade, Atty. Reg. No. 46993
1159 Delaware Street
Denver, Colorado 80204
Tel.: (303) 623-4357
Fax: (720) 554-7853
E-mail: joshua@berkencloyes.com

*Counsel for Dr. W. Rafer Leach, M.D.*